THE PEOPLE OF THE STATE OF NEW YORK ex rel. DANIEL P. GUINEY, Respondent, against LEWIS J. VALENTINE, as Police Commissioner of the City of New York, Appellant.

Argued April 26, 1937; decided May 25, 1937.

*Paul Windels*, Corporation Counsel (*Paxton Blair* and *Henry J. Shields* of counsel), for appellant. The testimony adequately established petitioner's guilt. Where the evidence was conflicting, the Commissioner resolved the conflict in a manner which betrays no abuse of discretion. (*Kirkpatrick* v. *Allemannia Fire Ins. Co.*, 102 App. Div. 327; 184 N. Y. 546; *Smith* v. *Smith*, 273 N. Y. 380; *People ex rel. Wood* v. *Department of Health*, 144 App. Div. 628; 202 N. Y. 610; *People ex rel. Cunningham* v. *Bingham*, 134 App. Div. 602; *People ex rel. Brown*,

v. *Greene*, 106 App. Div. 230; 184 N. Y. 565; *People ex rel. Hogan* v. *French*, 119 N. Y. 493; *People ex rel. Burke* v. *Waldo*, 163 App. Div. 28; *People ex rel. Masterson* v. *French*, 110 N. Y. 494.)

*Francis D. McGarey, John J. McMahon, Jr.*, and *William S. Overend* for respondent. The evidence was insufficient to sustain the action of the Police Commissioner. (*People ex rel. McCabe* v. *Fire Commissioners*, 106 N. Y. 257; *People ex rel. Leonard* v. *Cropsey*, 149 App. Div. 730; *Slaymaker* v. *Warren*, 224 App. Div. 229; *People ex rel. McAuley* v. *Baker*, 139 App. Div. 148; *People ex rel. Dougan* v. *Greene*, 97 App. Div. 404; *People ex rel. McDermott* v. *Roosevelt*, 6 App. Div. 382; *People ex rel. Tighe* v. *McAdoo*, 121 App. Div. 178; *Matter of Shea* v. *Valentine*, 249 App. Div. 556; *People ex rel. Balke* v. *French*, 123 N. Y. 660; *People ex rel. Baran* v. *Waldo*, 162 App. Div. 345; *People ex rel. Burns* v. *Baker*, 124 App. Div. 565.)

CRANE, Ch. J.  On the afternoon of September 22, 1935, Patrolman Guiney was off duty at four o'clock.  That evening he spent at his sister's house playing cards and drinking whisky; at least he had four drinks, according to his own statement.  At a little after midnight he came down Washington avenue toward Bergen street, Brooklyn, when he saw an automobile, in which one Salvatore Autorino was asleep while waiting for his father-in-law, who was " in the house."  Guiney was off duty and in civilian clothes.  Autorino testified: " He told me to get out of the car, and when I got out of the car he asked me for my license, see, so he was in civilian clothes, and I didn't know he was an officer, so I thought he was a hold-up-man, so I kicked him, and I ran up an alley-way, * * *, he fired at me, * * * and I stayed theer until I heard some people out in front of the door." Guiney proceeded to a nearby saloon where he was arrested, at the time having a pistol in his hand.

Sergeant Scott swore: " From my observation, it appeared to me as though Patrolman Guiney was intoxicated."

Sergeant Motjenbacker testified: " I saw that Patrolman Guiney had been drinking." And further, that Guiney said to him, " Well I went over to some fellow sitting in an automobile and I told him to stick up his hands. He jumped out of the car and I fired two shots at him."

The police surgeon, Henry Weinstein, who had been sent for to examine Guiney, said, " The odor of his breath was somewhat alcoholic, likewise aromatic. * * * He denied having been drinking." As before stated, Guiney in his testimony said he had had four drinks of whisky, so he did not tell the truth to the surgeon.

Autorino proceeded to the station house and made charges against the patrolman. Guiney told the officers that the man sitting in the car fired two shots at him. In his own behalf, he testified: " The next thing I knew I got a kick, and I fell kind of back to the car, and at the same time I heard a noise that sounded like the discharge of a revolver, so I jumped in back of the car to get out of the line of fire, and as I did I heard a second shot, it didn't sound as close as the first." Although Autorino came to the station house and identified Guiney as the man who shot at him, Guiney made no charge against him for illegally having a gun or for assaulting him with it. Besides, Autorino swore that he had no weapon or gun of any kind.

The Police Commissioner sustained the charge made against the patrolman, which was of conduct unbecoming an officer, prejudicial to good order and efficiency, and intoxication, and dismissed him from the force. The Commissioner's findings were supported by the evidence, as appears from the extracts given above. The Commissioner is responsible for the discipline of his force,

and if there be evidence to sustain the charges made against an officer, the courts are not justified in interfering with his decision. This rule has been repeatedly stated. In *People ex rel. Hogan* v. *French* (119 N. Y. 493, 496) this court said: " Where there was any evidence of the offense charged, or the facts admitted of any inference of guilt, we should follow the conclusion of the commissioners in view of their peculiar responsibilities and their larger opportunities of arriving accurately at the truth." And in *People ex rel. Brown* v. *Greene* (106 App. Div. 230, 232; affd., 184 N. Y. 564) it was said: " The holding of the appellate courts of this State has uniformly been that the good of the service requires that a wide discretion should be vested in police commissioners, and that their judgment and determination in a given case will not be disturbed unless there is an absence of evidence to sustain it. They being the statutory judges of offenses against the discipline and efficiency of the police force under their jurisdiction, their findings and determinations on the facts, when the evidence is conflicting and contradictory, should be regarded as conclusive, when there is, as in this case, sufficient evidence, if believed, to sustain their determinations."

Upon this same matter this court in *People ex rel. Masterson* v. *French* (110 N. Y. 494, 499) expressed the following views: " The government of a police force assimilates to that required in the control of a military body, and the interference of an extraneous power in its practical control and direction, must always be mischievous and destructive of the discipline and habits of obedience, which should govern its subordinate members. If its determinations upon all questions are subject to review, and appeals to some tribunal outside the force may be taken without restraint, it must necessarily lead to a want of respect towards their official superiors, and an impairment of the habits of obedience and discipline which are so essential to the efficiency and good conduct of a well regulated police force."

Approaching the evidence with these cautionary rules in mind we see at once that if the testimony against Guiney was believed, it ·was sufficient to justify disciplinary action. That the evidence was contradicted by Guiney did not justify a reversal of the Commissioner's determination. He was not obliged to believe it, especially as in parts it was contradictory and questionable. By section 1304 of the Civil Practice Act, the questions to be determined upon a hearing of the certiorari proceedings such as this include whether upon all the evidence a verdict of the jury in accordance with the findings would be set aside by the court as against the weight of evidence. To the Commissioner was presented a fair question of fact. His determination is supported by the evidence and it should not be set aside because the courts might have or could have arrived at a different conclusion.

The order of the Appellate Division should be reversed and the application for an order of certiorari denied, with costs in all courts.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Order reversed, etc.