In the Matter of FREDERICK H. ROGE, Respondent, against LEWIS J. VALENTINE, as Commissioner of the Police Department of the City of New York, Appellant.

Argued March 1, 1939; decided April 11, 1939.

*William C. Chanler*, Corporation Counsel (*Paxton Blair* and *Charles C. Weinstein* of counsel), for appellant. The petitioner's guilt of the charges contained in specification seven was clearly and convincingly established by competent evidence without the aid of section 374-a of the Civil Practice Act and without resort to former testimony read into the record. (*People ex rel. Niebuhr* v. *McAdoo*, 184 N. Y. 304; *People ex rel. Weston* v. *McClave*, 123 N. Y. 512; *People ex rel. Carney* v. *Scannell*, 80 App. Div. 320; *People ex rel. Powers* v. *Welles*, 18 App. Div. 132; *People ex rel.*

*Gurney* v. *Valentine*, 274 N. Y. 331; *People ex rel. Hargrave* v. *Johnson*, 10 N. Y. St. Repr. 404; *People ex rel. Morrissey* v. *Waldo*, 212 N. Y. 174; *People ex rel. McAleer* v. *French*, 119 N. Y. 502.) The petitioner's guilt of the charges contained in specification ten was established by his admissions and he cannot complain of the reception in evidence of photostatic copies of a check and check stub since he did not object to their introduction. (*People ex rel. Hirschberg* v. *Board of Supervisors*, 251 N. Y. 156; *People ex rel. Weston* v. *McClave*, 123 N. Y. 512; *People ex rel. Doherty* v. *Martin*, 84 Hun, 64; 148 N. Y. 757; *Matter of Yates* v. *Mulrooney*, 245 App. Div. 146; *People ex rel. Hansen* v. *McClave*, 31 N. Y. St. Repr. 246; *People ex rel. Gilson* v. *Gibbons*, 231 N. Y. 171; *Matter of Stowell* v. *Santoro*, 278 N. Y. 427.) The petitioner's guilt of the charges contained in specifications one to six, eight, nine and eleven was sufficiently established by competent evidence. The documentary evidence of the recommendation of cases by the petitioner to Sanders and of payments by Sanders to the petitioner was rightly admitted under section 374-a of the Civil Practice Act. The testimony given in the inquiry and in the disciplinary proceeding which was read into the record at the departmental trial was competent proof against the petitioner of the matters contained in such former testimony. (*People ex rel. Hirschberg* v. *Board of Supervisors*, 251 N. Y. 156; *People ex rel. Weston* v. *McClave*, 123 N. Y. 512; *People ex rel. Doherty* v. *Martin*, 84 Hun, 64; 148 N. Y. 757; *Matter of Yates* v. *Mulrooney*, 245 App. Div. 146; *Bullard* v. *Pearsall*, 53 N. Y. 230; *People* v. *Romano*, 279 N. Y. 392; *United States ex rel. Ng Kee Wong* v. *Corsi*, 65 Fed. Rep. [2d] 564; *Moy Said Ching* v. *Tillinghast*, 21 Fed. Rep. [2d] 810.)

*Lawrence Kovalsky* and *David Goldstein* for respondent. The charges filed against petitioner are insufficient to warrant his dismissal. (*Sicklick* v. *Schasseur*, 221 App. Div. 742; *People ex rel. Cohen* v. *Waldo*, 164 App. Div. 563; *People ex rel. Langan* v. *Hayden*, 80 Hun, 397; *People ex rel. Rudd* v. *Cropsey*, 173 App. Div. 714; *People ex rel. Packwood* v. *Riley*,

232 N. Y. 283; *People ex rel. Brennan* v. *Bingham,* 130 App. Div. 710.) Petitioner was dismissed without a hearing as required by section 22 of the Civil Service Law (Cons. Laws, ch. 7). (*Matter of Blount* v. *Forbes,* 250 App. Div. 15; *Matter of McMahon* v. *Devlin,* 254 N. Y. 397; *Morgan* v. *United States,* 304 U. S. 1; *People ex rel. Weston* v. *McClave,* 123 N. Y. 512; *People ex rel. Packwood* v. *Riley,* 232 N. Y. 283; *People ex rel. Hayes* v. *Waldo,* 212 N. Y. 156; *Matter of Reger* v. *Mulrooney,* 241 App. Div. 38.) Petitioner's dismissal was illegal because the evidence adduced was insufficient to prove the charges filed against him. (*People ex rel. Shuster* v. *Humphrey,* 156 N. Y. 231; *Matter of Everson* v. *Order of Eastern Star,* 265 N. Y. 112; *Matter of Bolin,* 136 N. Y. 177; *People* v. *Robinson,* 273 N. Y. 438; *Leask* v. *Hoagland,* 205 N. Y. 171; *Matter of Greenebaum* v. *Bingham,* 201 N. Y. 343; *People* v. *Manganaro,* 218 N. Y. 9; *People* v. *Russell,* 266 N. Y. 147; *Woolley* v. *Stewart,* 222 N. Y. 347; *Maloney* v. *Hearst Hotels Corp.,* 274 N. Y. 106; *Bowlby* v. *McQuail,* 240 N. Y. 684; *People ex rel. Gilson* v. *Gibbons,* 231 N. Y. 171.) Petitioner was deprived of a fair hearing because prejudicial hearsay evidence was permitted to be introduced as proof of the charges. (*People ex rel. Shiels* v. *Greene,* 179 N. Y. 195; *People ex rel. Moynihan* v. *Greene,* 179 N. Y. 253; *Matter of Greenebaum* v. *Bingham,* 201 N. Y. 343; *McCabe* v. *Brayton,* 38 N. Y. 196; *Grattan* v. *Metropolitan Life Ins. Co.,* 92 N. Y. 276; *Fink* v. *Thirty-seven West Thirty-sixth Street Co.,* 244 App. Div. 622; *People* v. *Robinson,* 273 N. Y. 438; *Leask* v. *Hoagland,* 205 N. Y. 171; *Johnson* v. *Lutz,* 253 N. Y. 124; *Rudd* v. *Robinson,* 126 N. Y. 113.) The check stubs and record cards of the attorney were not competent evidence as bearing upon the credibility of the testimony of the persons who made the entries. (*Blaschko* v. *Wurster,* 156 N. Y. 437; *Gray* v. *Vought,* 243 N. Y. 585.)

LEHMAN, J. The petitioner was appointed a patrolman in the Police Department of the city of New York in July, 1928. In 1937 charges in writing were preferred against him of

" conduct unbecoming an officer; conduct prejudicial to good order, efficiency and discipline; conduct prejudicial to public peace and welfare; neglect of duty " and violations of the rules and regulations. The charges contain twelve specifications. After a trial he was found " guilty as charged " and dismissed from the police force. Upon review of the determination of the Police Commissioner the Appellate Division annulled the determination " on questions of law and fact " and granted a new trial. Leave to appeal to this court was granted by the Appellate Division and five questions were certified.

The charges arise out of financial transactions between the patrolman and one Scott Sanders. They became acquainted in 1931 while the patrolman was assigned to the 102d Precinct. Scott Sanders was, at that time, an attorney. He had offices opposite the Magistrates' Court in the precinct to which the petitioner was attached. The greater part of Sanders' practice was as attorney for defendants in that court. In proceedings subsequently brought for his disbarment, evidence was introduced which tended to show that he had paid to the petitioner a share of fees received by him in certain cases as attorney. The charges against the petitioner followed upon Sanders' disbarment.

As amplified by the specifications, the charges may be summarized or classified as follows: (1) That the petitioner recommended or suggested to Scott Sanders, as a prospective client, the name of a man who had been arrested on a charge of burglary where the petitioner was one of the arresting officers; (2) that the petitioner at times accepted and received from Scott Sanders sums of money for services rendered in connection with that case and divided these sums with another patrolman with whom he was acting in concert; (3) that on dates set forth in the specifications, the petitioner accepted and received from Scott Sanders checks for various amounts, as gratuities, without the consent or approval of the Police Commissioner and during the period of time when the petitioner " was representing the People of the State of New York in various courts in the

Borough of Queens where the said attorney [Scott Sanders] practiced law."

The sufficiency of the charges is challenged, and it is said that the petitioner was dismissed without a hearing as required by section 22, subdivision 1, of the Civil Service Law (Cons. Laws, ch. 7). We have considered the contentions of the petitioner on these points and have rejected them. They are ignored in the opinion of the Appellate Division, and extended discussion in this opinion would serve no useful purpose. The integrity of those charged with the duty of enforcing the law should be beyond suspicion. Rules of the Police Department provide that a police officer shall not accept gratuities for " police services without the consent of the Police Commissioner " nor shall he " recommend or suggest to anyone the employment or name of any person, firm, or corporation, as attorney, counsel, or bondsman." We are told that the facts alleged in the specifications of the charges filed show no violation of these rules. Distinction is drawn between recommending to any one a person *as attorney*, which is prohibited by the rules of the department, and recommending or suggesting the *name of a client* to an attorney, which it is alleged the petitioner did. It is said too that it does not appear in the charges that the gratuities which it is alleged that the petitioner received and accepted, were paid for " police services." The prohibitions contained in the rules are directed against acts which may be innocent, if done with innocent intent, but which tend to demoralize the police force, facilitating temptation and covering corruption. Such acts are stamped as wrongful at all times, regardless of whether in particular instance they may be innocent in purpose or in effect. The prohibition of the acts specified in the rules may not be regarded as a license or a grant of immunity for other acts where purpose or effect is not innocent. It is plain that any patrolman who receives and accepts from an attorney practicing in the police court in the precinct to which the patrolman is attached, money as a gratuity or in payment for services, past or future,

rendered or hoped for, voluntarily places himself in an equivocal position, destroys his usefulness as a police officer and is guilty of misconduct which justifies, if, indeed, it does not dictate, dismissal from the force. The specifications gave notice to the relator of very serious charges of misconduct. He has been found guilty after a hearing conducted in conformity with due process of law and pursuant to statutory directions " in the mode required by law." The only questions which require serious consideration in this court are (1) whether in making the determination of guilt, any rule of law affecting the petitioner's rights has been violated to his prejudice; (2) whether there is any competent proof of guilt; and (3) if there was such proof, whether upon all the evidence there was such a preponderance of proof against the finding of guilt that if the finding had been made by a jury it could be set aside by the court as against the weight of evidence. (Civ. Prac. Act, § 1296.)

The petitioner admits that he received from Scott Sanders on or about August 31, 1936, a check for the sum of forty-three dollars and that at various times he received other checks or money in small amounts. They represented temporary loans, he testified, promptly repaid. He denies receipt of any moneys as gratuities or in payment of any services rendered or as reward in advance for anticipated favors. If his explanation is accepted as true, there was nothing sinister in the payments made and received; Scott Sanders and the petitioner were, it is said, friends, and temporary loans for small amounts made by one friend to another and promptly repaid would ordinarily raise no inference of wrong even where the loan is made to a police officer. The petitioner's story is not contradicted by any witness; indeed it is corroborated by the testimony in this proceeding of Scott Sanders, and a former clerk of Scott Sanders. It is argued that under such circumstances guilt has not been established.

Scott Sanders and his former clerk were called as witnesses for the prosecution. The testimony which they gave was certainly not calculated to assist the prosecution. It was

in substantial respects inconsistent with testimony they had previously given in the disciplinary proceedings brought against Scott Sanders. It was inconsistent too with notations on record cards and check stubs which formed part of the office records of Scott Sanders. The prior statements made by the witnesses in the disciplinary proceedings and the office records were admitted in evidence upon the hearing of the charges against the petitioner. The statements and records indicate that moneys and checks were given by Sanders and received by the petitioner not as temporary loans promptly repaid, but, as alleged in the specifications of the charges, as gratuities or as rewards in connection with cases where Sanders was retained as attorney and where the petitioner as a member of the police force owed undivided loyalty to the People of the State, not to be undermined by traffic with counsel for the accused. The first question we are called upon to answer is whether the testimony given by the witnesses in the disciplinary proceeding is " competent, as substantive proof, on the departmental trial, of the petitioner's guilt without being reaffirmed on such trial " and whether it was " proper to receive in evidence generally upon the departmental trial, over petitioner's objections, the exhibits consisting of check stubs and record cards made by Scott Sanders or his clerk." If these questions are answered in the affirmative, then there can be no doubt that there is ample evidence to sustain the finding of petitioner's guilt.

The rule has long been established that prior contradictory statements, whether made in court under oath or outside of court orally or in writing, may in proper case be introduced to impeach the credibility of a witness, but do not constitute affirmative evidence or " evidence in chief " of the facts stated. (*McCabe* v. *Brayton*, 38 N. Y. 196; *Grattan* v. *Metropolitan Life Ins. Co.*, 92 N. Y. 274.) By section 343-a of the Civil Practice Act the Legislature has provided that " in addition to impeachment in the manner now permitted by law, any party may introduce proof that a witness has made a prior statement inconsistent with

his testimony, irrespective of the fact that the party has called the witness or made the witness his own, provided that such prior inconsistent statement was made in any writing by him subscribed or was made under oath." In unambiguous terms the statute enlarges the field in which impeachment of a witness by proof of prior inconsistent statements is permitted, but the statute does not in express terms or by fair implication provide that such proof may be introduced for purposes other than impeachment of a witness. The question was left open in *People* v. *Romano* (279 N. Y. 392). Legal scholars have at times contended that except for contrary judicial decision " there is nothing to prevent the tribunal from giving such testimonial credit to the extra-judicial statement as it may seem to deserve," but admit that " the contrary view, however, is the orthodox one. It is universally maintained by the courts that prior self-contradictions are not to be treated as having any substantive or independent testimonial value." (2 Wigmore on Evidence [2d ed.], § 1018.) No sufficient reason appears why the court should reconsider now a rule of evidence so firmly established by the courts.

Notations upon record cards and check stubs are merely extra-judicial statements of facts. They might in proper case be introduced in evidence, like other extra-judicial statements, to impeach a witness, or as admissions when made by a party to the action. They had at common law no " substantive or independent testimonial value " against third parties. The common law rule has been changed to some extent by section 374-a of the Civil Practice Act, so that now " any writing or record * * * made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter." Argument is now made that the record cards

and check stubs were made by the statute admissible evidence in proof of the acts recorded therein.

It does not sufficiently appear in this case that the notations on the record cards and check stubs were made in the regular course of business and at the time of the transaction noted or within a reasonable time thereafter. Technical defects might be disregarded, but here the defects are more than technical. Notations made by third persons, records of past transactions have probative force only when made under conditions that at least provisional confidence can be placed in them. The statute defines the conditions which in the opinion of the Legislature would give to the notation of records sufficient assurance of verity that they might be accepted provisionally as proof of the facts stated. In this case there is a complete lack of proven basis for such assurance of verity. The persons who made the notations, testifying as witnesses for the prosecution to establish the reliability of notations they have made, have in fact completely demonstrated their lack of probative force as independent affirmative evidence. (Cf. *Johnson* v. *Lutz*, 253 N. Y. 124; *People* v. *Robinson*, 273 N. Y. 438.) It follows that the Appellate Division correctly held that no finding of guilt can be based on such evidence.

That does not mean that the trier of the facts was bound to reject such evidence completely. In the disciplinary proceedings against Sanders they were competent as admissions made by him and were sufficient to prove his misconduct. In the proceeding before the Police Commissioner, such evidence was admissible as bearing upon the credibility of the witnesses who had made prior statements and notations, and when admitted that evidence destroyed completely their credibility. The trier of the fact was justified, perhaps constrained, to reject completely their testimony before him. We are not now concerned with technical rules of evidence. In disciplinary proceedings before a Police Commissioner or other administrative officer, rules of evidence or proof devised for trials in court may prove impractical and unsuitable. We have said that then some latitude must be allowed

" as to rules of evidence, methods of examination and the like, but no essential element of a fair trial can be dispensed with unless waived, and no vital safeguard violated without rendering the judgment of conviction subject to reversal upon review." (*Matter of Greenebaum* v. *Bingham*, 201 N. Y. 343, 347.) " Administrative boards, though acting in a quasi-judicial capacity, may employ a yardstick devised by the use of reason and fairness to meet their particular problems. In the review of their determinations, the courts must apply a similar measure." (*People ex rel. Hirschberg* v. *Board of Supervisors*, 251 N. Y. 156, 161.) The ultimate question here presented is whether so measured, the evidence properly received and given its logical probative force, demonstrates misconduct by the petitioner meriting his dismissal, though the prior statement and notations in business records of the witnesses are given only the limited effect which we have indicated.

When the problem which the Police Commissioner was called upon to solve is stated in simple form its answer seems clear. A police officer admittedly has at times received moneys from an attorney whose practice is for the most part as attorney for defendants arraigned in the court to which persons arrested in the precinct to which the police officer is attached are brought. Unexplained, any financial transactions between police officer and lawyer so situated justify at least grave suspicion, if not, indeed, an inference of grievous misconduct. Certainly in such circumstances a police officer may properly be called upon by his superior for explanation. Two persons are in a position to furnish that explanation, the lawyer and the police officer. The lawyer furnishes an explanation proven to be false by his own prior statements and by his office records. The police officer essays an explanation which, under the circumstances, was of such dubious quality that a trier of the facts, weighing the probabilities, perhaps could not in reason accept, and, certainly, was justified reasonably in rejecting. We think that then the only course open to the Police Commissioner was to find the petitioner guilty of misconduct at least as

set forth in the twelfth specification, and probably also as set forth in some other specifications, and to order his dismissal.

We think that a practical man of affairs would be bound to reach that conclusion and so would a student trained in methods of search for the truth other than the methods embodied in our common law rules of evidence and burden of proof. Doubt arises when common law rules devised for judicial trials and of proven value there are applied to a disciplinary proceeding before an administrative officer. There we preserve the spirit of the rules, but we reject the letter. There may be room for possibility of injustice in every case where the law places upon an accused the burden of explaining acts which though giving rise to justified suspicion of wrong, are themselves equivocal. A police officer who knowingly receives moneys under circumstances here disclosed should not be heard to complain when his departmental superiors require him to explain his act which without such explanation would destroy his usefulness as a police officer. A police officer is guilty of serious fault when he does an act even without evil intent which tends to destroy confidence in his integrity and honesty.

The order of the Appellate Division should be reversed and the determination of the Police Commissioner confirmed, without costs. (See 280 N. Y. 809.)

Certified questions 1 and 2 are answered in the negative and questions 3, 4 and 5 in the affirmative.

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Ordered accordingly.