Harris, J.
The petitioner, Boman J. Laurence, became a member of the New York State Police force July 1, 1931; he remained in such position until his dismissal and discharge therefrom, on September 30, 1946, on charges preferred by the Superintendent of the New York State Troopers Division of State Police. During his service in the State Police, he was inducted into the armed services and after serving therein was honorably discharged from such armed services. By reason of his service in the United States Army, he became entitled to, and was given, a trial on the charges. By this proceeding, he seeks review of the determination and discharge.
The only question that comes before this court in this proceeding is whether there is in the record of his trial sufficient evidence, that would appeal to a person of reasonable mind, to sustain the charges. (People ex rel. Masterson v. French, 110 N. Y. 494; People ex rel. Hogan v. French, 119 N. Y. 493; People ex rel. Guiney v. Valentine, 274 N. Y. 331; Matter of Weber v. Town of Cheektowaga, 284 N. Y. 377; Matter of Miller v. Kling, 291 N. Y. 65.) Whether there is sufficient evidence is *611 to be determined from the contents of the record on which the determination was made.
The following is a summarized statement of the entire proof presented before the Superintendent of State Troopers at the time of the hearing on such charges:
The petitioner was a member of the New York State Police force and actively so (except during his service in the armed forces during World War II) for fifteen years and three months. At no time were there any other charges preferred against him and, so far as the record shows, his conduct while in such service, except for the matters now under consideration, was in every manner satisfactory. At the time that the episode occurred on which the charges were based, he was president of the Police Benevolent Association of New York State Police, Inc. (This court was informed on argument that this organization includes only men in the ranks of the troopers, and its members numbered approximately 40% of the troopers without rank.) The petitioner resides with his wife in the city of Niagara Falls, N. Y.; his wife, Mrs. Mary Genevieve Laurence, was the paid recording financial secretary of the association and had charge of their funds and the receiving and banking thereof. The charges center on one occurrence: A captain in the United States Navy, while driving through the State of New York, left his uniform cap in a restaurant in the vicinity of Le Roy, N. Y. The petitioner, at that time, was assigned to duty at, and lived in, the barracks in Batavia, N. Y. In endeavoring to locate his cap which had been left at some place, the location of which he could not remember, the naval captain wrote to the New York State Police at Le Roy, N. Y., asking that the cap be located and said, “ if the cap can be located and mailed to me I will be glad to send a $5.00 reward to whoever is responsible for mailing to me. Perhaps one of the State Police having that area can locate the cap. Any assistance will be appreciated, and if located please ask the responsible party to notify me by mail and return address on package, and I-will send the $5.00.” In the routine order of business, the assignment for locating the cap came to the petitioner. He located the cap in a restaurant outside of Le Roy, N. Y., packed it into a box addressed to the naval captain, and placed on the outside of the box a return address as follows: “From R. Laurence, 718-1 81st Street, Niagara Falls, N. Y.” which was the home address of his wife and himself. The uncontradicted testimony was that this inscription was put on the package so that if the package went astray it could be returned to the sender who, by departmental rule, was *612 held responsible for the return of the cap. After shipping the cap, he made a report to his superior officer as follows: ‘ ‘ Troop ‘ A ’ Batavia, New York July 5, 1946 Subject: Capt. J. D. Green, Naval War College, Newport, B. I. To: Trooper Commander, Troop ‘ A ’ 1. The above subject submitted the enclosed letter to this troop Hdqts., requesting a check be made in an effort to locate his Naval Officer’s Cap which was left in a restaurant about 52 miles from Buffalo, on route 5. 2. This assignment checked with restaurants along Boute 5 and located subject’s cap at the Shady-Best Inn, Le Boy B.F.D. #1. This Inn is operated by Mrs. Ethel Schneider. When interviewed she produced the hat. When informed of the contents in the letter the hat was put in a box, wrapped and mailed to the above subject’s address. Bespeetfully submitted /s/ B. J. Laurence TBP B. J. Laurence.” The naval captain sent a check for $5 to the address in Niagara Falls, marking on such check “ For return of cap ”. The check never came to the attention of the petitioner before the charges were brought, but was received by his wife and deposited by her in the bank with other funds to the credit of “ Police Benevolent Association of New York State Police, Inc.” Previous to such deposit she indorsed the check “ B. Laurence ”. The check was to the order of B. Laurence. She made this deposit in the belief that the check was a gratuity intended for the association fund, as other checks had been sent and received for that purpose. Through further correspondence from the naval captain, the petitioner’s superior officer became informed of the manner in which the cap was returned with the name and home address of the petitioner on the outside of the package, and of the fact that the naval captain had sent the $5 check addressed to B. Laurence at that home address. There then was undertaken an investigation by the department in which the petitioner was employed and, as a result of such investigation, charges were preferred against him as follows: “ Exhibit ‘ A \ Charges and Specifications, State of New York, Executive Department, Divi•sion of State Police, Albany, N. Y., Batavia, N. Y., August 12, 1946. To the Superintendent of State Police, Capitol, Albany, N. Y. (Through Official Channels) I hereby Charge Trooper B. J. Laurence, a member of Troop ‘ A ’, Division of State Police, Batavia, N. Y., with: Charge No. 1. Violation of Article 8, Section 8.3 of the Bules and Begulations, Division of State Police. Specification, Trooper B. J. Laurence did on or about July 5th, 1946, in violation of Troop Order No. 61, dated June 7th, 1944, subject: ‘ Official Correspondence conduct *613 correspondence on State Police official business without direction of the Troop Commander. Charge No. 2. Violation of Article 8, Section 8.26 of the Bules and Begulations, Division of State Police. Specification, Trooper B. J. Laurence did between July 5th, 1946, and July 22, 1946, accept a reward or gratuity for a service resulting from the performance of his duty without the approval of the Commanding Officer. Charge No. 3. Violation of Article 8, Section 8.38 of the Bules and Begulations, Division of State Police. Specification, Trooper B. J. Laurence did on or about July 5th, 1946, in the performance of his official duties, display reluctance to perform properly his assigned duties, and acted in a manner tending to bring discredit on the Division. Charge No. 4. Violation of Article 9, section 9.4 of the Bules and Begulations, Division of State Police. Specification, Trooper B. J. Laurence did on or about July 5th, 1946, submit to his Troop Commander a report that was not complete as to facts and details.” After the hearing on such charges, the petitioner was found guilty on all such charges and dismissed from the service. It is to be gathered from the record that such charges have only to do with the violations arising from the loss of the cap and its return and the sending of the $5 check by the naval captain. That portion of the rules and regulations of the New York State Troopers which were deemed applicable by the hearing Superintendent, are as follows: “ New York State Troopers ’ Bules and Begulations Article 8. Conduct. * * * 8.3. It shall be the duty of every member of the Division of State Police to obey every lawful command or order issued orally or in writing by competent authority which shall mean, the Commanding Officer, commissioned officers, non-commissioned officers or members of the Division senior in rank and/or grade to the recipient of the command or order. * * * 8.26. No member of the Division shall accept a reward or gratuity for a service resulting from the performance of his duty without the approval of the Commanding Officer. * * * 8.38. Any member of the Division who shall in the performance of his official duties display inaptitude, inadaptability, reluctance to perform properly his assigned duties, or who acts in a manner tending to bring discredit on the Division or fails to assume responsibility or exercise diligence, intelligence and zealousness in the pursuit of his duties may, after a hearing, be deemed incompetent and shall be subject to reduction in rank or dismissal from the Division. * * * Article 9 General. * * * 9.4. All members of the Division shall make all their official activities the subject of a written *614 report, submitted to the Commanding Officer or the Troop Commander as applicable. All such reports shall be legible, neat in appearance, in proper form as to spelling, grammar and punctuation, in proper chronological order and complete as to facts and details. They shall be submitted promptly and shall, when possible, be typewritten.” ■“ Troop Order No. 61, June 7,1944, Subject: Official correspondence. To: All Members, Troop ‘ A.’ I. All Troop * A ’ State Police, official correspondence will be conducted by Troop ‘ A ’ Headquarters clerical staff under the direction of the Commanding Officer. 2. No member other than those of the Headquarters staff will write letters or write replies to letters that pertain to State Police official correspondence. J. B. Lynch, Act. Commanding Officer.” To sustain the charge that there was a violation of that regulation or rule which reads as follows: “ 2. No member other than those of the Headquarters staff will write letters or write replies to letters that pertain to State Police official correspondence ”, the respondent Superintendent asserts that the return card of the address placed by the petitioner on the outside of the package by which the cap was returned, was a violation of such rule or regulation. Such a contention is not reasonably supported by the language of such rule or regulation. The placing of the inscription on the outside cover was not the writing of a letter, or the writing of a reply to a letter, in the ordinary use and meaning of such words. As has been indicated above, not only did not the petitioner accept or receive the $5 check, but he knew nothing of the sending and receipt of the same. In the proof above mentioned, there is nothing to sustain a finding that Trooper R. J. Laurence, the petitioner, did “ display reluctance to perform properly his assigned duties ” and acted “ in a manner tending to bring discredit on the Division ”. And there is no proof to sustain a finding, as made by the Superintendent, that the petitioner submitted to his troop commander a report that was not complete as to facts and details.
It is true that the credibility of all of the witnesses was to be passed on by the trial officer, and he was entitled to draw such legitimate and reasonable inference as he deemed proper, if there were more than one inference to be drawn from, undisputed testimony. There was no proof offered to contradict the testimony of either the petitioner or that of his wife; their testimony was not impeached by anything in the record and cannot be disregarded as unbelievable, and there does not appear anything substantial, even in the way of an inference, to sustain the findings of the trial officer.
*615 From the foregoing, the conclusion is reached that there was not sufficient evidence to sustain any of the charges.preferred against the petitioner on which a reasonably minded superior could find him guilty of any of the charges preferred against him.
The determination under review should be annulled and petitioner reinstated, with $50 costs and disbursements.