Shientag, J.
Petitioner, a war veteran, after a hearing to which he was entitled under section 22 of the Civil Service Law, before a hearing officer who was competent to act, was dismissed by respondent Triborough Bridge and Tunnel Authority from his civil service position of bridge and tunnel officer. He was dismissed on charges characterized by the authority as “ charges of misconduct, violations of rules and neglect of duty ”, but an examination of the record discloses that petitioner was tried, not for inefficiency or carelessness but, to put it bluntly, with thievery in connection with improper and incorrect toll classifications of trucks passing through his toll lane. That determination petitioner seeks to review in this court under article 78 of the Civil Practice Act.
A preliminary statistical study tended, in the opinion of the authority, to warrant inquiry into the conduct of petitioner. It was charged that on December 23, 1948, from about 8:30 a.m. to 3:00 p.m., while he was under observation by two “ checkers ” in the employ of the authority, petitioner improperly classified twenty trucks for toll charge purposes. The “ checkers ” testified that these were, in their opinion clear and obvious “ under-classifications ”. Of the twenty instances so testified to, in five of the cases Class 4 vehicles (trucks over five tons — 500- toll) were classified as Class 3 (trucks over two tons but less than five — 350 toll), and in fifteen cases Cíass 3 vehicles were classified as Class 2 (trucks under two tons — 250 toll).
The two “ checkers ”, who testified they possessed expert qualifications, made their observations from a window on the top floor of a tower about 550 feet away from the lane in charge of petitioner, and those observations were necessarily made by the use of field glasses.
When a truck is classified, the number of the classification appears above the booth visible to the driver of the truck and *390 a receipt for the toll charge is given to the driver upon request.
Considerable doubt is cast upon the accuracy and the dependability of the observations of the “ checkers ” because of their distance from the toll lane in controversy, the rapidity with which the vehicles arrived and were classified, and the limited space in which the vehicles were under direct and continuous observation, owing to embankments restricting their view.
It was conceded by the witnesses for the authority that an opportunity to view the lower portion of the trucks in order to see the number of axles and wheels was an important aid in classifying them. It was further conceded that the lower three and one half or four feet of trucks approaching the toll gate were obscured except as they passed certain openings in the abutment wall caused by two ramps. The roadway of each ramp was about twenty feet wide but the visible width was only about fifteen feet. Assuming that the trucks were traveling at the speed of ten miles per hour, as estimated by the authority’s witness, this would mean that the lower portion of the trucks was visible to an observer in the tower, 550 feet away, for slightly more than one second in each instance.
The assistant corporation counsel who prosecuted the charges stated on several occasions that it was solely the testimony of the “ checkers ” that was relied upon to prove the charges. However, in order, as he termed it, to present a complete picture of the situation, he did introduce, over objection, considerable hearsay testimony designed to support the testimony of the “ checkers ” concerning the observations made by them.
At a hearing such as was here involved, hearsay testimony is not barred (Matter of Roge v. Valentine, 280 N. Y. 268). Administrative agencies are not confined to those rules of evidence which prevail in a court of law. All that is required is that there be a “ residual ” of competent evidence of probative force so substantial as to support the determination of the agency (Matter of Carroll v. Knickerbocker Ice Co., 218 N. Y. 435, 440). Notwithstanding the limitations placed upon the use of the hearsay testimony when it was introduced by the assistant corporation counsel, the hearing officer undoubtedly considered that evidence in arriving at his conclusion, for it constituted a considerable part of the proof.
The nature of the hearsay evidence may be briefly summarized. In nine of the twenty “ misclassificatidns ” recorded by the “checkers”, they observed name signs on the vehicles. After the observations on December 23, 1948, the two “ checkers ” attempted to interview the nine business firms whose *391 vehicles carried signs of identification. Some of the firms could not be located. In one instance, a firm which was included by the “ checkers ” as one of the twenty “ misclassifications ” advised that no one in its employ had used the bridge on the day in question. However, as the result of their investigations the “ checkers ” obtained four receipts which they were told by representatives of employers covered trucks included under the twenty “ misclassifications ”, and the “ checkers ” inspected three trucks, pointed out to them, which the “ checkers ” identified as having been observed by them and “ misclassified ” on December 23d.
Even in the four instances where the receipts were admitted in evidence, the drivers were not called upon to prove that these receipts for the amounts stamped thereon were issued for the trucks which the authority claims petitioner improperly classified; nor did any representatives of the concerns whose names were on the trucks testify that they respectively owned such trucks.
The dangers inherent in such hearsay testimony are apparent. Witnesses were available who could testify directly concerning the matter in controversy and whose testimony could be tested by cross-examination. The assistant corporation counsel, in his brief, evidently had this in mind, because he makes the point that the administrative agency “ has no power to subpoena or compel outside persons to appear and testify against employees in these disciplinary trials. It must depend completely upon its own forces and methods.” This is a misconception of the law.
The Triborough Bridge and Tunnel Authority has the right, when it holds a hearing under section 22 of the Civil Service Law in connection with disciplinary proceedings, to issue subpoenas to compel the attendance of outside witnesses.
Subdivision 7 of section 553 of article 3 of the Public Authorities Law gives the authority power to appoint employees and to fix their compensation, subject to the provisions of the Civil Service Law. Section 22 of the Civil Service Law provides, in the case of veteran's, for a hearing on due notice on stated charges with a right to review. Hearings upon charges pursuant to section 22 of the Civil Service Law are held by the officer or body having the power to remove the person charged with incompeteney or misconduct or by a deputy or other employee of such officer or body designated in writing for that purpose. In other words, the authority has statutory power to hear and pass on charges.
*392 Section 406 of the Civil Practice Act provides that when a “ person, or board or committee, has been heretofore or is hereafter expressly authorized by law to hear, try or determine a matter * * * in relation to which proof may be taken, or the attendance of a person as a witness may be required; or to require a person to attend, either before him or it * * * or to be examined; a subpoena may be issued by and under the hand of the # * * person, or the chairman or a majority of the board or committee, requiring the person to attend * * Further provisions provide for the enforcement of this power by judicial assistance, if necessary. These sections, read together, give full power to compel the attendance of witnesses, so that in a proper case sworn testimony may be presented which will be subject to cross-examination. This eliminates the need for testimony of doubtful weight and competence. We have felt impelled to draw attention to this power, since the authority has taken the position that such power was lacking.
The authority, indeed, has not been given, under the Public Authorities Law, general powers to issue subpoenas, such as was given to the Power Authority by the Legislature in section 1006 of the Public Authorities Law. But no general grant of power is necessary in view of the provisions of the Civil Practice Act and of section 22 of the Civil Service Law. The power to try a veteran on charges carries with it the implied power to hear the case on competent evidence and, if necessary, to get the aid of a court of law in procuring the attendance of necessary witnesses. Of course, this implied power to issue subpoenas applies only to the determination of the charges in hand.
This court is fully, aware that, in an article 78 proceeding to review the determination of an administrative agency, and this applies to hearings under section 22 of the Civil Service Law, the power of the reviewing court is a limited one (Matter of Burke v. Bromberger, 300 N. Y. 248; Matter of Miller v. Kling, 291 N. Y. 65; Matter of Humphrey v. State Ins. Fund, 298 N. Y. 327; People ex rel. Guiney v. Valentine, 274 N. Y. 331). It is only when there is no substantial evidence of a competent, probative force to sustain the administrative conclusion that a court is warranted in setting it aside (Matter of Weber v. Town of Cheektowaga, 284 N. Y. 377, 380; Matter of O’Kelly v. Hill, 286 K Y. 593).
The rule is simple; its application, however, is beset with many difficulties. Each case, therefore, must be considered in *393 the light of the particular circumstances there involved. In reviewing administrative determinations, a court must consider on the one hand that such determinations may not be disturbed where there is substantial evidence to support them — evidence sufficient to satisfy a reasonable man, and on the other hand a reviewing court must also consider that insufficiency of evidence is, in the eyes of the law, no evidence — certainly no evidence of any substantial character (Matter of Case, 214 N. Y. 199; Matter of Stork Restaurant v. Boland, 282 N. Y. 256, 273-274). A reviewing court has more than a passive, acquiescent function to perform when it passes upon the determinations of administrative agencies; it has a real judicial function to exercise where it reviews the sufficiency and the substantiality of the evidence upon which those agencies have acted.
In view of the authority’s misconception of its power to subpoena outside witnesses to testify directly to the facts in controversy, and having in mind the likelihood of error in the observations made by the “ checkers ” in the circumstances here involved (error which their own later checkup to some extent demonstrated), we believe that the interests of justice require that this case be remitted to the respondent for a new hearing at which witnesses may be subpoenaed to testify to the facts, or some of them, which the hearsay evidence received at the hearing was designed to prove. Particularly is this necessary because of the seriousness, in their essence, of the charges preferred against this petitioner, his prior good record of employment and his status as a war veteran. The determination appealed from should be accordingly annulled, without costs, and the proceedings remitted to the respondent for hearing in accordance with the foregoing opinion.
Dore, J. P., Cohn, Callahan and Van Voorhis, JJ., concur.
Determination unanimously annulled, and proceeding remitted to Triborough Bridge and Tunnel Authority for a new hearing in accordance with the opinion by Shientag, J., filed herein.