Breitel, J. (dissenting).
There are two issues in the case. The first is whether there was substantial evidence to support an administrative finding that a police officer had intentionally *691 filched cheese while shopping in a chain supermarket. The second is whether a police organization is arbitrary in dismissing an officer who has committed such an offense, petty or not.
Two employees testified unequivocally to observing the police officer who had pocketed two packaged cheeses while paying for other foods carried in a shopping cart. The police officer on several occasions before the hearing and in testimony on the hearing denied the larcenous taking but never contradicted the described observations of the employees, except to say that he would not have bought or taken one of the two cheeses; he did not even know what kind of cheese it was. He denied any intention to take merchandise without paying for it. That should really be the end of the matter. The inferences to be drawn from the observations and the assessment of credibility are matters of fact in. the sole province of the fact-finder, the administrative agency.
Be that as it may, the testimony also shows that the police officer was known to employees of the store. What precipitated the complaint had been a prior incident, six days before, resulting in closer surveillance by the store’s employees. Thus an employee testified: “ This time I seen [the petitioner, referred to by first name] come in the store because it possibly could have been a mistake the first time. So we watched him.” On the day in question the one employee had advised the other that11 he was again in the store and that he had some merchandise in his possession ”. The other testified: “ I went down the aisle and in his pocket I saw the merchandise. As he checked out of the store I could still see very plainly in his pocket the merchandise and what it was.”
Much is made of the fact that unlike ordinary shoplifters, this police officer was not stopped after leaving the store and required to return. It hardly needs explanation why store clerks are not likely to take it upon themselves to stop police officers who appropriate petty items in a shop. But the implicit is made explicit in the record. The employee explained: “In my opinion we didn’t do it because I do know [the petitioner] vaguely from coming in the store and talking and I did know he was a New York State Trooper and I myself didn’t know how [he] would take it.” A more tactful measure was adopted. An employee of the store who was also a deputy chief of the local city police force *692 was advised, and that functionary took care of the matter, eventually resulting in the instant disciplinary proceeding.
Much is also made of the fact that one of the employees in his far past, 9 years before at age 18, had been subjected too a summary court-martiai in the army, and the other had been adjudged a youthful offender (such a judgment being a matter which the statute says should be disregarded for all disqualifying and stigmatic purposes [Code Crim. Pro. § 913-n]). If properly in the record, these skeletons of their past may bear, of course, on their credibility, but that is also a matter of fact to be assessed exclusively by the administrative fact-finder, and not by the courts.
Without exception, whenever it is discussed, it is said that administrative determinations are reviewable only for errors of law, one of which is the presence of substantial evidence (e.g. 1 Benjamin, Administrative Adjudication in New York, pp. 328-340; Cohen and Karger, Powers of the New York Court of Appeals, p. 460; 1 N. Y. Jur., Administrative Law, §§ 177, 185, 192). It is also said, whenever it is discussed, that the credibility of witnesses is solely a question of fact for the administrative fact-finder (e.g. Matter of Avon Bar & Grill v. O’Connell, 301 N. Y. 150, 153; Matter of Stork Rest. v. Boland, 282 N. Y. 256, 267; cf. 4 Davis, Administrative Law, § 29.06). Indeed, this court has often sustained dismissals based on less and more contradicted testimonial evidence than that in this case (see, e.g., Matter of Sowa v. Looney, 23 N Y 2d 329, 336, testimony of a complainant against a police officer in the face of corroborated alibi testimony; Matter of Evans v. Monaghan, 306 N. Y. 312, dismissal based on testimony of convicted bookmaker; Matter of Burke v. Bromberger, 300 N. Y. 248, 249-250, dismissal of a court clerk on the contradicted and confused testimony of complainant holding ‘ ‘ it was not impossible or incredible, and in refusing to give any effect to it, the Appellate Division was substituting its views, on a question of fact, for that of the Chief Magistrate who heard the witnesses. Nothing is better settled than that the court had no such power in such an article 78 proceeding”; People ex rel. Guiney v. Valentine, 274 N. Y. 331, 335, dismissal based on contradicted testimony of complainant; People ex rel. Brown v. Greene, 106 App. Div. 230, 232, affd. 184 N. Y. 565, holding that “ the credibility to be given [the witnesses] and the weight to be attached to their evidence was *693 peculiarly within the province of the deputy commissioner ”).
But there are times evidently when the sentiment of Judges is wrenched by serious consequences imposed on employees of many years service or one is troubled by the low quality of witnesses upon which the determination rests. Then there comes some kind of “review” (see, e.g., Matter of La Forge and Ix v. Kennedy, 7 N Y 2d 973, 974, revg. 8 A D 2d 143; Matter of Tessier v. Board of Educ., 19 N Y 2d 680; Matter of Kelly v. Murphy, 20 N Y 2d 205). For this kind of review there is no warrant except the ipse dixit that substantial evidence is lacking or the truism that the séarch for substantial evidence requires an examination of the whole record. Moreover, there is in civil matters a constitutional limitation on this court’s jurisdiction confining its review in certain classes of cases, of which this is one, to issues of law (N. Y. Const., art. VI, § 3).
As a practical matter, police organizations have high esprit de corps, sophistication in dealing with the most untrustworthy members of society, and expertness in handling evidentiary material. Between the natural concern for their own and the equally natural skepticism for the untrustworthy or criminal witness, it is not likely that a police organization will sacrifice the one because of gullibility toward the other.
The last comments should also dispose of the issue of the discipline to be imposed for what would seem to many a petty offense. Police organizations, better than others, know the significance of retaining in their service men who may indulge in practices for which they are empowered or required to make arrests.
In People ex rel. Guiney v. Valentine (supra), involving dismissal of a police officer, the court quoted with approval from People ex rel. Brown v. Greene (supra): “‘The holding of the appellate courts of this State has uniformly been that the good of the service requires that a wide discretion should be vested in police commissioners, and that their judgment and determination in a given case will not be disturbed unless there is an absence of evidence to sustain it. They being the statutory judges of offenses against the discipline and efficiency of the police force under their jurisdiction, their findings and determinations on the facts, when the evidence is conflicting and contradictory, should be regarded as conclusive, when there is, as in this case, sufficient evidence, if believed, to sustain their determinations.'” It further quoted from People ex rel. Masterson *694 v. French (110 N. Y. 494, 499): “‘The government of a police force assimilates to that required in the control of a military body, and the interference of an extraneous power in its practical control and direction, must always be mischievous and destructive of the discipline and habits of obedience, which should govern its subordinate members. If its determinations upon all questions are subject to review, and appeals to some tribunal outside the force may be taken without restraint, it must necessarily lead to a want of respect towards their official superiors, and an impairment of the habits of obedience and discipline which are so essential to the efficiency and good conduct of a well regulated police force.’ ”
The matter was pinpointed by Mr. Justice Hoyt with memorable quotations in Matter of O’Shea v. Martin (34 Misc 2d 987, 989), in which he said: “ A police officer occupies a unique role in our society. Respondents ’ brief contains a quotation of Mr. Arthur Cornelius, Superintendent of the New York State Police, from an address to newly-sworn State troopers which is quite apt: ‘ You must live as though you are in a glass house for everyone observes your actions wherever you are'. In Matter of Roge v. Valentine (280 N. Y. 268, 280) Judge Lehman wrote: ‘ A police officer is guilty of serious fault when he does an act even without evil intent which tends to destroy confidence in his integrity and honesty.’ ”
Accordingly, I dissent and vote to affirm the order of the unanimous Appellate Division confirming the administrative determination.
Order reversed, etc.