JOHN SHELLY, DEFENDANT IN ERROR, v. BRUNSWICK TRACTION COMPANY, PLAINTIFF IN ERROR.

Argued December 7, 1900—Decided March 4, 1901.

1. It is not error to refuse to direct a verdict for the defendant when there is evidence upon the question of the defendant's negligence and of the plaintiff's contributory negligence in addition to that of the happening of the accident from which the defendant's liability may be fairly inferred.
2. Evidence that plaintiff was intoxicated on occasions previous to the accident is irrelevant and incompetent.
3. Where the proof of the intoxication of the plaintiff at the time of the accident depends upon the testimony of several witnesses as to various actions of the plaintiff from which intoxication might be inferred, a direction of the judge that the jury must find intoxication of the plaintiff before considering its effect upon the question of contributory negligence, was proper.
4. The charge of the judge that "he [the motorman] says he took the risk. The company should not take risks" and "he [meaning the plaintiff] had, you may say, a right to assume that a trolley car would not run into him," taken in connection with the rest of the charge and the evidence in the case, held proper.

On error to the Supreme Court.

For the plaintiff in error, *Willard P. Voorhees.*

For the defendant in error, *George S. Silzer.*

The opinion of the court was delivered by

GARRETSON, J. The plaintiff recovered a judgment against the defendant for personal injuries received by him, by reason of his wagon being run into from the rear by a trolley car of the defendant as he was driving on the tracks of the company in the evening, and a reversal of that judgment is sought, upon the grounds that the trial justice refused to direct a verdict for the defendant, excluded legal testimony and erred in charging the jury.

There was no motion to nonsuit, and it is necessary to consider all the testimony bearing upon the question of the negligence of the defendant and the contributory negligence of the plaintiff in order to determine whether the case was properly

left to the jury or whether the court should have directed a verdict as requested.

If these questions were fairly debatable, then their determination was properly left to the jury. As to the negligence of the defendant, there were circumstances testified to beyond the mere fact of the happening of the accident. These circumstances bear upon the question of the exercise of reasonable care on the part of the defendant and the control which the motorman had over his car. Such circumstances were the speed of the car, it being testified to by different witnesses. One witness says it was running along "at their regular rate of speed;" "generally fast;" "about their full speed." Another witness says "going about five miles an hour," and as bearing upon the speed of the car and the motorman's control over the car is the evidence of the distance traveled by the car after it struck the wagon, the distance the wagon and horse were thrown by the blow, the damage to the wagon and to the plaintiff from the blow and the damage to the car. There is also evidence bearing upon the care exercised by the motorman, as to the degree of darkness at the place where the accident occurred and as to the distance that the wagon could be seen, and was seen, by the motorman before it was struck. This left the negligence of the defendant to be determined by the jury.

The contributory negligence of the plaintiff had to be established by evidence; it could not be presumed. He was driving in a place where he had, by law, a right to drive, and was struck on the rear of his wagon by the defendant's car. This did not prove contributory negligence, and it was for the defendant to satisfy the jury by evidence of action or want of action on his part that he had contributed to the accident.

The plaintiff's testimony was that he was driving on the track, and as soon as he heard the bell he looked back and saw the car and endeavored to get off the track; he succeeded in getting his horse off and his wagon partially, when he was struck. The evidence of the motorman is that no such effort was made; that the plaintiff kept right on straight ahead and the car struck the wagon right in between the hind wheels.

The question of the contributory negligence of the plaintiff was properly left to the jury, and the request to direct a verdict for the defendant was properly refused.

The evidence excluded was as to the intoxication of the plaintiff on other occasions than at the time of the accident.

The plaintiff was asked these questions: "Have you ever had any trouble with the trolley cars before? Have you, on previous occasions, had the trolley cars stop by reason of your being on the track? Have you had your horse led off the track before this time by the employes of the trolley company?"

A witness for the defendant, who had testified that he did not know whether the plaintiff was drunk at the time of the accident, was asked: "Is he a man who gets drunk? Have you seen him intoxicated on numerous occasions?"

And another witness for the defendant was asked: "What were his habits in regard to sobriety? Have you ever taken care of the plaintiff when he was in a state of intoxication? State whether or not you have seen the plaintiff, on several occasions within two or three months of this occurrence, in a state of intoxication?" And the defendant's counsel, stating his purpose to be, to prove that the plaintiff is of intemperate habits, so much so that he became helpless and unable to take care of himself or his property, asked: "Have you frequently seen this plaintiff in a state of intoxication so that he was unable to take care of himself, and have you, upon such occasions, taken care of him and his team?" (referring to occasions prior to the time of the accident). All of these questions were objected to and excluded, and exceptions taken.

The evidence was not relevant. To prove that the plaintiff was intoxicated on previous occasions, or, as the defendant's counsel puts it in his brief, was addicted to the use of intoxicating liquors, would not prove that he was intoxicated at the time of the accident, and to show that on previous occasions of intoxication he was in a helpless condition would not tend to show that on the occasion in question he was intoxicated to such a degree as to be helpless.

It has come to be generally accepted that the character of a party in a civil cause cannot be looked to as evidence that he did or did not do an act charged. 1 *Tayl. Evid.* 251; 1 *Greenl. Evid.* (16th ed.), § 146.

The issue upon this part of the case was the negligence of the plaintiff, not his intoxication; it did not matter whether he was drunk or sober. If the defendant had shown that the plaintiff was in the habit of becoming intoxicated, and that when intoxicated he became helpless, that would not have shown contributory negligence. It would have been necessary to go still further and prove that the acts of commission or omission which caused the accident were negligent ones. Such proof is an effort to account for the acts of the plaintiff, but is not proof of the acts themselves. Such evidence would introduce into the case collateral issues which were not raised by the pleadings.

In *Kingston v. Fort Wayne and Evansville Railway Co.,* 70 *N. W. Rep.* 315, it was held to be error to permit defendant to introduce testimony showing that, two or three years prior to that time, the plaintiff was in the habit of becoming intoxicated. *Williams v. Edmunds,* 75 *Mich.* 92; *Heland v. City of Lowell,* 3 *Allen* 407; *Warner v. New York Central Railroad Co.,* 44 *N. Y.* 465; *Thompson v. Bowie,* 4 *Wall.* 463; *Jackson v. Smith,* 7 *Cow.* 717.

The defendant's counsel requested the court to charge the jury—"If the jury believe that the plaintiff was intoxicated, and that by the exercise of ordinary prudence could have avoided the accident if sober, he is guilty of contributory negligence and cannot recover." "That if the accident was partly due to the intoxication of the plaintiff, he cannot recover;" and the judge charged as requested, and followed with this caution: "But you must find, before you can take up the consideration of these requests, that he was intoxicated. It must not be conjecture on your part or guess work. It does not follow that because the man sang in his wagon, or asked perhaps foolish questions of passersby, or that his breath smelled of liquor, that he was intoxicated. That is some evidence of the fact, but you must find, in order to invoke the law of these requests, that he was intoxicated, and that that intoxi-

cation contributed to the accident; that is, that a sober man would not have been hurt," and it is upon this statement that error is assigned. The judge thereby did not state any rule of law different from that contained in the requests to charge, and it no more than pointed out to the jury, by a recital of the evidence, to what extent intoxication should be proved in order to show how far it affected the plaintiff's acts of alleged negligence. We think there was no error in this part of the judge's charge.

Error is also assigned to a statement in the charge of the judge in which the court says: "He [the motorman] says he took the risk. The company should not take risks." This expression by the judge, taken in connection with the rest of the charge and with all the evidence in the case on that subject, was unobjectionable. The motorman had testified that it was a very dark night; that there were trees along the road on the edge of the sidewalk; that the foliage is such that the top of a wagon can just get under nicely; that he was running about five miles an hour; that he saw the plaintiff's wagon ahead of him; that he put on his brake and kept ringing his bell, and thought that the plaintiff would get off in time, so he kept on to see if he would get clear; that he did not notice that the plaintiff was turning; that he thought he would get off by the time he got close to him, and he then testified as follows:

"*Q.* How was it, if this was such a dark hole, that you did not come down to a low speed as you went through it?

"*A.* I was down to a low speed.

"*Q.* There was a lower speed?

"*A.* Yes, sir.

"*Q.* You can run less than five miles an hour?

"*A.* Yes, sir.

"*Q.* You knew that this was a dark and dangerous place and that somebody might be under those trees; why did you not pull down the car and go slowly, so you would not hit anyone?

"*A.* I was running the risk of that; I was going along and looking ahead to see that there was no danger ahead.

"*Q.* You ran the risk if there did happen to be somebody, then you would have to take your chance?

"*A.* I would have to stop my car.

"*Q.* And the result of which was that Shelly was hit?

"*A.* Yes, sir."

It seems quite clear that the motorman was substituting what he calls "running the risk" for the exercise of that care which the law requires. He did not reduce his speed below which he was running, or get his car so under control that it could be promptly stopped if anyone appeared on the track ahead, but he continued on his course without taking into consideration the possible danger of someone being on the track and assuming that the track was clear; in other words, basing his action on a clear track. He took the risk of some-one being on the track ahead; that is, he excluded that chance from the consideration of the way in which he should manage his car. This, of course, he had no right to do.

Error is also assigned upon that part of the judge's charge in which he says: "He [meaning the plaintiff] had, you may say, a right to assume that a trolley car would not run into him." This is only a part of a sentence, and is taken out of a paragraph of the charge dealing with the question of the plaintiff's contributory negligence and his right in the highway. When read in connection with the whole paragraph, we see nothing in it which lays down any rule of law different from those established by the decisions of this court. It was no more than a statement to the jury that the plaintiff might assume that the trolley company, having equal rights with him and he having equal rights with them in the public highway, would so exercise those rights as not to do damage to him. *Camden, Gloucester and Woodbury Railroad Co.* v. *Preston,* 30 *Vroom* 264; *Consolidated Traction Co.* v. *Haight,* 30 *Id.* 577.

The judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, FORT, GARRETSON, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 11.

*For reversal*—None.