THEODORE KOLANKIEWIZ, RESPONDENT, v. MARY A. BURKE, APPELLANT.

Submitted December 10, 1917—Decided March 4, 1918.

1. Section 1 of the Motor Vehicle act of 1906 (*Comp. Stat.*, p. 3426) excludes from the statutory definition of motor vehicles such as run only upon rails or tracks, and thereby excludes from the effect of section 22 street cars of the usual type.

2. Section 22 of the Motor Vehicle act of 1906 (*Comp. Stat.*, p. 3426) does not operate to prevent a city from passing an ordinance regulating the conduct of the driver of a vehicle when passing a street car while it is stopping to take on or discharge passengers.

3. A city ordinance requires that a vehicle when passing a street car while it is stopping to take on or discharge passengers, should keep at least four feet 'from the right-hand running-board or lowest step of the car, and that if by reason of the presence of other vehicles or by reason of the narrowness of the street or any other reason, it was not possible to preserve such distance of four feet, the driver should bring his vehicle to a full stop until the car had again started. *Held*, that the ordinance was not in conflict with section 22 of the Motor Vehicle act of 1906. *Comp. Stat.*, p. 3426.

4. A city ordinance regulating the conduct of the driver of a vehicle when passing a street car while it is stopping to take on or discharge passengers, is not in conflict with the provision of the Motor Vehicle act of 1906 that forbids municipal ordinances limiting or restricting the use or speed of motor vehicles.

5. Failure to comply with a city ordinance may be evidence of negligence as well as failure to comply with a statute (*Evers* v. *Davis*, 86 N. J. L. 196, followed), but it is not conclusive. *State* v. *Schutte*, 88 *Id.* 396, followed.

6. The effect of violation of a city ordinance as evidence of neglect is the same in the case of a child ten years old as in the case of an adult.

7. The effect of violation of a city ordinance as evidence of negligence when the ordinance is meant primarily to safeguard passengers on street cars, extends to the case of pedestrians; everyone is entitled to rely on all safeguards provided by law, no matter what motive actuated the legal authorities.

On appeal from the Supreme Court.

The plaintiff was injured while crossing a public street in Newark by the defendant's motor car. The jury might properly find that a street car had stopped for passengers; that the plaintiff was crossing the street in front of the car and was struck by defendant's motor car which had overtaken the street car and was passing on the left.

For the appellant, *Frank E. Bradner.*

For the respondent, *Leo Stein.*

The opinion of the court was delivered by

SWAYZE, J. The first question raised in the case that calls for an expression of opinion is the admissibility of the city ordinance. The accident occurred before the passage of the act of 1915 (*Pamph. L., p.* 285), and the case is therefore controlled by the act of 1906 (*Comp. Stat., p.* 3426), if applicable. The point made is that the ordinance conflicts with the statute. Section 22 of the statute enacts that no owner, purchaser or driver of a motor vehicle shall be excluded or prohibited from, or excluded or limited in the free use thereof, nor limited as

to speed upon public streets, nor required to comply with other provisions or conditions as to the use of motor vehicles except as in the act provided. The statute further enacts that no municipality shall have power to make any ordinance limiting or restricting the use or speed of motor vehicles, and that no ordinance theretofore or thereafter made by any municipal or local authority in respect to or limiting the use or speed of motor vehicles shall have any force, effect or validity. There is a provision that drivers of motor vehicles when overtaken by another motor vehicle, carriage, sleigh or sled, shall keep to the right. A similar provision in the General Road act has been construed to require the driver of the vehicle in the rear, who desires to pass, to pass on the left. *State* v. *Unwin*, 75 *N. J. L.* 500.

The city ordinance requires that the driver of a vehicle, when passing a street car while it is stopping to take on or discharge passengers, shall keep at least four feet from the right-hand running board or lowest step of the car, shall give audible indication of his approach, and exercise due precaution not to interfere with or injure passengers getting on or off the car; and that if by reason of the presence of other vehicles, or by reason of the narrowness of the street, or any other reason, it is not possible to preserve such distance of four feet, the driver shall bring his vehicle to a full stop until the car shall have taken on or discharged its passengers and again started. The trial judge rightly construed this as requiring the vehicle overtaking a street car, which had stopped to receive or discharge passengers, to pass on the right and not on the left as provided by the road law and by section 22 of the Motor Vehicle act of 1906.

As to section 22 it is enough to say, with the trial judge, that it clearly applies only to motor vehicles, carriages, sleighs or sleds, and that section 1 of the same act excludes from the statutory definition of motor vehicles such as run only upon rails or tracks.

The difficulty arises out of the statutory provisions already cited forbidding municipal ordinances limiting or restricting the use or speed of motor vehicles.

The language is broad enough to forbid such an ordinance as the present, but must be construed in the light of the situation that existed at the time the statute was passed, and of the failure to provide for cases which were then as well as now known to require some regulation, either general by the legislature or local by municipal authority. To deal first with the latter. One of the most frequent causes of accident was collision between street cars and motor vehicles, and one of the serious dangers was that passengers boarding or alighting from street cars might be struck by an approaching motor vehicle. In view of the notoriety of the danger, especially in our crowded cities, we must assume that if the legislature had meant in 1906 to regulate the whole subject, it would not have failed to make provision for the case of motor vehicles meeting or overtaking street cars. It would have done what it did in 1915, provided careful regulations. These regulations in the later act were evidently meant to be supplementary to the act of 1906 and a substitute therefor, since the later act contains the unusual and extraordinary provision in section 26 that nothing therein shall alter or amend any provision of the act of 1906. We need not now consider whether this provision prevents the ordinary effect of a later act in repealing inconsistent provisions in the earlier act. It is enough at present to say that the act of 1915 makes it clear that the legislature itself did not regard the act of 1906 as covering the whole subject. It was not necessary that it should. The municipalities then had power to regulate the use of the streets as a part of their police power. The difficulty to be cured by the statute did not arise from lack of power in the municipalities; it arose from conflicting regulation by different municipalities. The motor vehicle was then still novel. Some question had been made as to whether it was lawful to use such a machine on our highways, and even when the legality of its use was conceded, municipal regulations had been passed limiting the speed at which the motor vehicle might run; and each municipality adopted its own rule. The differences in this respect were an obstacle to any motorist who desired, as a few did, to run within the law. The result was a spirit defiant of law and an imperative need of

a general regulation of the subject by the legislature. These considerations explain the language of the statute "limiting the use or speed." We think that for the reason already stated the words are not to be given a broader meaning which would invalidate municipal ordinances intended for the public safety without putting anything in their place. If that had been the intent, the legislature would have added in 1906 a section similar to section 25 of the act of 1915; and it is worthy of note that even that section permits some control of the streets to the municipalities, an object indicated by the very title of the act.

That the failure to obey the city ordinance was evidence from which a jury might infer negligence is settled by the principle of our decision in *Evers* v. *Davis,* 86 *N. J. L.* 196. A city ordinance is as evidential in this respect as a statute. It is, as we have held, evidential but not conclusive. *State* v. *Schutte,* 88 *Id.* 396. It is not important that the child was only ten years old. If it was negligent, as the jury might find, to turn to the left, the act would remain negligent whether a child or an adult was injured. If the child might otherwise properly have been found guilty of contributory negligence, that finding might be prevented by the principle that one may properly assume that the law will be obeyed. *Durant* v. *Palmer,* 29 *Id.* 544; *Suburban Electric Co.* v. *Nugent,* 58 *Id.* 658. A child's rights in this respect are no less than the rights of an adult. It can make no difference that the regulation was probably meant primarily to safeguard passengers. Every one is entitled to rely on all safeguards provided by law, no matter what motive may have actuated the legal authorities. The case is not one of contract but of tort, and if a negligent act is a tort as to one, it is a tort as to all who may be injured thereby.

Let the judgment be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ. 12.

*For reversal*—None.