WILLIAM B. McQUAGE, Appellant, v. CITY OF NEW YORK, Respondent.

First Department, December 21, 1954.

*Benjamin H. Siff* of counsel (*Klein & Ruderman,* attorneys), for appellant.

*Samuel D. Johnson* of counsel (*Seymour B. Quel* with him on the brief; *Adrian P. Burke, Corporation Counsel,* attorney), for respondent.

Bastow, J.   The plaintiff appeals from a judgment entered upon a jury verdict in favor of the defendant.   The action was brought to recover damages for personal injuries alleged to

have been received while the plaintiff was in the process of boarding a bus owned and operated by the defendant. It appears to be undisputed that the bus was standing at its terminal point with the bus driver waiting for the scheduled departure time. The operator testified that when it was time to leave he closed the doors and drove away. He did not see the plaintiff and after driving twenty feet he heard a yell and brought the bus to a stop. He left the bus and found plaintiff lying in the street. The plaintiff, on the other hand, testified that as he was about to board the standing bus, the doors were closed and he was dragged some distance, receiving serious injuries that confined him to various hospitals and convalescent institutions for about fourteen months after the date of the accident. Plaintiff's expert witness testified that to have the unusual stripping or avulsion of practically the entire skin of plaintiff's right lower extremity '' he would have to be dragged to have the skin flayed open '' and that condition would not result if plaintiff fell against the side of a moving bus and was then thrown under the rear wheel. Defendant city offered no proof whatever that plaintiff had hit the side of the bus and had been run over by the rear wheel.

The issues presented to the jury were largely centered about the conflicting testimony of these two witnesses. In this posture of the case we conclude that the admission of certain testimony upon the cross-examination of the plaintiff and the receipt in evidence of a statement made by a passenger in the bus so weighted the scales against the plaintiff that he was deprived of a fair trial.

The defense, to a substantial degree, was centered upon showing that plaintiff was intoxicated. Upon cross-examination the plaintiff stated he had '' a couple of drinks during the day ''. A portion of the hospital record disclosed that when plaintiff was admitted '' (t)here was an alcoholic odor on his breath.'' The attending physician testified that the plaintiff had delirium tremens some hours after the accident. He expressed the opinion that this was the result of the shock of the accident and further stated that while such tremens were caused by prior habituation with alcohol, the conclusion could not be drawn that the plaintiff had been drunk at any specific time. Moreover, a policeman was permitted to testify, over the objection of plaintiff's counsel, that a man accompanying plaintiff prior to the accident '' was apparently intoxicated ''.

It was against this evidentiary background that defense counsel was permitted over objection to cross-examine the plaintiff

in the following fashion: " Q. Mr. McQuage, have you ever been convicted of intoxication, drunk and disorderly? * * * A. Convicted of being drunk? Q. Yes. A. Yes. Q. How many times, Mr. McQuage? * * * A. Oh, half a dozen different times in my life. * * * Q. When was the last conviction for drunkenness before the accident? [A.] I couldn't say exactly the date, but it had been two, two and a half, three years."

It is the contention of the defendant that this interrogation of plaintiff on cross-examination was proper under the rule permitting a party to impeach the credibility of his opponent's witness by (a) questioning him concerning any immoral, vicious or criminal act of his life which may affect his character and tend to show that he is not worthy of belief or (b) showing that he had been convicted of a crime.

It is recognized that section 350 of the Civil Practice Act permits cross-examination of a witness as to his prior conviction of a crime for the purpose of affecting the weight of his testimony. Moreover, the cross-examiner is not concluded from further showing the conviction although it is admitted by the witness (cf. *Moore* v. *Leventhal,* 303 N. Y. 534, 538).

In the instant case the plaintiff was asked if he had ever been convicted of " intoxication, drunk and disorderly ". In the first place there is no such crime in our Penal Law. Section 1221 of the Penal Law provides for arrest and punishment of any person intoxicated in a public place. Prior to 1911 this act was denominated a misdemeanor but in that year such characterization was omitted. (L. 1911, ch. 700.) It is now included in a third class of offenses which are neither felonies prosecuted by indictment and triable by common-law jury, nor misdemeanors triable by Courts of Special Sessions with or without the statutory jury of six, but one of the petty offenses triable summarily by a magistrate without a jury (cf. *Matter of Cooley* v. *Wilder,* 234 App. Div. 256, 259; *People* v. *Grogan,* 260 N. Y. 138, 141; *People* v. *Waters,* 153 Misc. 686).

In *People* v. *Murphy* (177 Misc. 1042, affd. 263 App. Div. 1051, affd. 288 N. Y. 613), the defendant was accused in an indictment of escaping from a penitentiary in violation of section 1694 of the Penal Law after having been convicted and sentenced to that institution for public intoxication which was characterized in the indictment as a misdemeanor. It was held that public intoxication was not a misdemeanor but one of the minor or petty offenses. It is significant to note that in the same year the Court of Appeals affirmed the judgment dismissing the indictment, the Legislature amended section 1694 to pro-

vide that one escaping from a penal institution is guilty of a misdemeanor if confined upon conviction for a " misdemeanor, *offense, traffic infraction, or violation of an ordinance* " (italicized portion added by L. 1942, ch. 142). The same result could have been achieved, insofar as we are here concerned, by amending section 1221 to provide that public intoxication was a misdemeanor but this was not done.

It is recognized that section 1221 by its provisions does not apply to the city of New York but here the questions relating to " intoxication " did not specify any particular place. No foundation was laid to show that the conviction took place in a jurisdiction where " intoxication " was a crime and no such contention is advanced by the defendant upon this appeal. We conclude that the cross-examination was improper and prejudicial if its purpose was to show that plaintiff had been convicted of a crime.

The defendant contends that the cross-examination as to prior convictions for intoxication was proper as bearing generally upon the credibility of the plaintiff. The rule is recognized that a trial court is granted wide latitude in permitting cross-examination of any witness by proof of any specific act or practice affecting his character and tending to show that he is not worthy of credit. The impeachment is solely for the purpose of diagnosing his conscience and thereby enabling the jury to determine the extent of his veracity and credibility as a witness. Testimony which does not tend legitimately to discredit his evidence is irrelevant and should be excluded (*People* v. *Richardson,* 222 N. Y. 103, 107). The witness may be " interrogated upon cross-examination in regard to any vicious or criminal act of his life " that has a bearing on his credibility as a witness. (*People* v. *Sorge,* 301 N. Y. 198, 200.)

We have herein found that the convictions for public intoxication were not criminal acts. In the setting here presented we believe that the receipt of the evidence was prejudicial and should have been excluded. The obvious purpose of the testimony was not to impeach the credibility of the plaintiff but to show that he had been intoxicated on other occasions and thus permit the jury to draw the inference that he was intoxicated at the time of the happening of the accident. Proof of intoxication on occasions prior to the accident was not admissible to prove or suggest that plaintiff was intoxicated at the time of the accident. The authorities relied upon by the defendant relate to proof of intoxication at the time of the event. It has been said upon the general subject of testimonial impeachment

that " a general *habit of intemperance* tells us nothing of the witness' testimonial incapacity except as it indicates actual intoxication at the time of the event observed or the time of testifying; and hence, since in its bearing upon moral character it does not involve the veracity-trait * * * it will usually not be admissible." (3 Wigmore on Evidence [3d ed.], § 933, p. 481.)

The defendant called as a witness a Mrs. Setkulich, who had been a passenger on the bus. During her direct examination a statement in writing was received in evidence that the witness had signed on the day of the accident. Certain portions thereof undoubtedly were admissible as inconsistent with her testimony. The writing, however, not only disclosed these inconsistencies but included statements that were speculations on the part of the witness or the expression of an opinion. The writing, among other things, stated that the plaintiff and his companion may have " tried to board [the bus] by the rear exit door. I do not know. * * * This accident was not the fault of the bus driver."

The portions of the statement inconsistent with the testimony of the witness could have been properly admitted for the purpose of impeachment (Civ. Prac. Act, § 343-a) but such prior self-contradictions are not to be treated as having any substantive or independent testimonial value (*Matter of Roge* v. *Valentine,* 280 N. Y. 268, 276). It is doubtful if the charge of the court clearly informed the jury as to this rule of law. The court said that " [y]ou will consider her testimony today, and the matters contained in the statement, and you will determine what credence to give to her entire testimony. In other words, the statement has not been received as proof of the matters therein set forth, but for whatever weight you desire to accord her testimony. * * * You will take the statements themselves, and also her testimony, and determine what weight to accord to it."

Thus, the defendant was enabled to convey to the jury the irrelevant speculation of the witness that the plaintiff was trying to enter the bus by the exit door. This, of course, was immaterial and highly prejudicial evidence laid before the jury to bolster the defendant's claim that plaintiff and his companion were intoxicated.

We conclude that these accumulated errors affected a substantial right of the plaintiff and deprived him of a fair trial. There were close questions of fact presented to the jury. It is significant that they twice returned for instructions. On the first occasion they sought information with reference to " plaintiff's

statement with reference [to] which door he was entering.'' The only evidence in the case was plaintiff's testimony that he attempted to enter the front door. The speculation in this writing of the bus passenger that he may have been trying to enter the rear exit door had apparently not been lost upon the jury and they may well have been using it as substantive testimony. The jury an hour and a half later requested to hear the bus driver's testimony, which was read to them. We cannot say that the improperly received evidence was not a decisive factor in the verdict in favor of the defendant.

The judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

Cohn, J. (dissenting). In this action for damages for personal injuries a verdict in favor of defendant was rendered after a jury trial. Plaintiff appeals from the judgment entered thereon claiming prejudicial errors in the admission of evidence.

Shortly after midnight on October 11, 1952, plaintiff, a seaman, had left a tavern at South Ferry Plaza and crossed the street to a point where a bus owned by the City of New York was standing. Plaintiff testified that he put his right foot on the lower step and, with one hand, grasped a stanchion located a few inches from the top of the step; that as he did so the door folded into a closed position and the bus started off fast, throwing him off balance with his arm caught inside the bus, causing him to be dragged along the highway. He fell on his right hip '' The bus was running, and I was dragging, the last I remember ''. He suffered severe injuries to his right leg, his right side and his right hip. Upon admission to the Beekman-Downtown Hospital the same morning, he was found to be in profound shock, and there was a strong alcoholic odor on his breath. (See physician's report, hospital records, signed by Nurse C. Hangett.) On October 12th, according to the hospital records, he smelled of injected alcohol, and on October 14th he developed delirium tremens, a disease which, according to the testimony, is the product of prior habituation with alcohol, but which may also be brought on by shock.

On behalf of defendant, the bus driver testified that when it was time for him to proceed on a trip north, he closed the doors, waited for a few seconds, and started up slowly. After proceeding twenty or thirty feet he heard a yell. He stopped the bus and found plaintiff lying on the ground behind the vehicle. That was the first he had seen plaintiff. The driver stated that the bus could not operate with the doors open.

A lady, Barbara Setkulich, who was a passenger at the time of the accident, called by defendant, said that as the bus started up, she felt it go over something like a bump. She looked through the rear window and for the first time observed plaintiff. She had no recollection as to anything else. The trial court permitted defendant to place into evidence a statement which this witness had made and signed a few hours after the accident in which she stated that plaintiff and his friend were not near the front door of the bus at any time; that "This accident was not the fault of the bus driver".

Upon cross-examination defendant was permitted to elicit from plaintiff over exception that he had been previously convicted of intoxication on at least six different occasions. It is urged that such ruling constituted prejudicial error. Plaintiff was the only witness who gave testimony as to his version of how the accident occurred. The bus driver told a directly contradictory story. Thus plaintiff's credibility was a sharp issue. The cross-examination was competent for the purpose of testing his credibility. It was, of course, not proper for the purpose of establishing that he was intoxicated at the time of the accident. Nor is there any showing that it was offered for such a purpose. A specific instruction as to the effect of the testimony might readily have been obtained but no request of that nature was ever sought.

The rule is well settled that a witness may be cross-examined concerning any previous vicious, illegal or immoral acts which he may have committed. (*People* v. *Sorge,* 301 N. Y. 198, 200; *People* v. *Webster,* 139 N. Y. 73, 84.) The manner and extent of the cross-examination lies within the discretion of the Trial Judge. (*People* v. *Malkin,* 250 N. Y. 185, 197; *People* v. *Bilanchuk,* 280 App. Div. 180, 184.) Evidence that a witness has been convicted of being drunk and disorderly is admissible as affecting his credibility. (*People* v. *Burns,* 33 Hun 296.) This rule has been followed in other jurisdictions. (*McLaughlin* v. *Mencke,* 80 Md. 83; *Kock* v. *State,* 126 Wis. 470; *State* v. *Campbell,* 166 Mo. App. 589; see, also, *Harding* v. *Great Northern Ry. Co.,* 77 Minn. 417.) Drunkards are defined in the Code of Criminal Procedure as disorderly persons. (§ 899, subd. 4, see, also, Penal Law, § 1221.) Proof that a witness has been convicted of intoxication on six different occasions is competent to show that the witness might not have respect for the truth or for the sanctity of an oath. (*People* v. *Richardson,* 222 N. Y. 103, 109.)

Plaintiff argues, citing section 350 of the Civil Practice Act, that only convictions for a crime, i.e., a felony or a misdemeanor, are admissible for the purpose of impeachment; that an offense short of a crime, such as disorderly conduct or being adjudged a disorderly person is not a proper matter of inquiry on that issue. However, the language of section 350 does not preclude questioning into any past illegal or improper act on the part of a witness, even though there may have been no conviction for the offense. (*People* v. *Sorge,* 301 N. Y. 198, 200, *supra.*) Where the inquiry concerns a felony or a misdemeanor, a denial of conviction does not conclude the cross-examiner, but it permits the introduction in evidence of the record of such conviction for the purpose of affecting the weight of this testimony. In a case involving disorderly conduct or intemperance or some other offense which involves moral turpitude, the cross-examiner is bound by the answers of the witness. Here plaintiff admitted that he had been repeatedly adjudged guilty of intoxication. In the circumstances the court in a proper exercise of discretion committed no error in its ruling by permitting this evidence.

Plaintiff also claims that it was prejudicial to allow defendant to introduce into evidence a statement signed by the lady witness Setkulich. From her testimony given in chief it was apparent that she had but little recollection of what had occurred at the time of the accident. She admitted, however, signing a statement within a few hours after its occurrence. It was properly received by virtue of the provisions of section 343-a of the Civil Practice Act, in view of the fact that it might well be regarded as a prior inconsistent statement made in writing subscribed by her. The trial court was careful to point out to the jury that the statement was received solely for the purpose of impeaching the credibility of that witness. As to the weight to be accorded to it, the court said:

" The City also called as a witness the lady named Barbara Setkulich, who was a passenger on the bus. You heard her testimony given on the stand today as to what she knew about the accident. Because of her inability to recall some matters contained in a statement subscribed by her on the morning of the accident, I admitted her statement in evidence. You will consider her testimony today, and the matters contained in the statement, and you will determine what credence to give to her entire testimony.

" *In other words, the statement has not been received as proof of the matters therein set forth, but for whatever weight you*

*desire to accord her testimony.* There is a statement there the accident was not the driver's fault. That statement you will disregard, because you are the judges of the facts. You will take the statements themselves, and also her testimony, and determine what weight to accord to it." (Italics supplied.) The italicized portion correctly states the apposite law. (*Matter of Roge v. Valentine,* 280 N. Y. 268, 276–277; *Underhill* v. *Slutzky,* 260 App. Div. 882.) In view of the court's instruction, no error was committed in the ruling with respect to this statement.

It is also argued that the court erroneously permitted a police officer to testify that plaintiff's companion (now deceased), at the time of the accident was apparently intoxicated. Such testimony was obviously improper, but the error was harmless. In the circumstances of this case it should be disregarded because no substantial right of plaintiff's was affected thereby. (Civ. Prac. Act., § 106; *Post* v. *Brooklyn Heights R. R. Co.,* 195 N. Y. 62.)

Plaintiff had a fair trial. The propriety of the court's charge was not questioned, nor does plaintiff assert any error in passing upon requests. The charge was adequate and just to both sides. Clearly the accident could not have occurred in the manner described by plaintiff. The injuries sustained by him were not caused by any negligent act on the part of defendant. The verdict of the jury was in accord with the credible evidence, and it should not be disturbed.

Accordingly, I dissent and vote to affirm.

PECK, P. J., DORE and BREITEL, JJ., concur with BASTOW, J.; COHN, J., dissents and votes to affirm in opinion.

Judgment reversed, with costs to the appellant to abide the event.